No. 24-2003

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

_____

MARVIN OWENS,
*Plaintiff-Appellant,*

v.

GARY SCHUETTE ET AL.,
*Defendants-Appellees.*

_____

On Appeal from the United States District Court, Eastern District of
Michigan. Case No.: 2:24-cv-10787 (Hon. Gershwin A. Drain)

_____

# BRIEF OF THE MUSLIM PUBLIC AFFAIRS COUNCIL AS
# AMICUS CURIAE IN SUPPORT OF APPELLANT AND REVIEW
# *EN BANC*

_____

Nicholas Reaves
Yale Law School
Free Exercise Clinic
1919 Pennsylvania Ave. N.W.
Suite 400
Washington, D.C. 20006

Daniel Hay
Lillian Holmes
John Lee
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000

Phillip Shaverdian
Sidley Austin LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000

April 18, 2025


*Counsel for Amicus Curiae Muslim Public Affairs Council*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26. and Sixth Circuit Rule 26.1(a), Amicus Curiae the Muslim Public Affairs Council certifies that it does not have a parent corporation and that no publicly held company has ten percent or greater ownership in the Muslim Public Affairs Council.

4934-4378-4502v.1

# **TABLE OF CONTENTS**

INTEREST OF AMICUS CURIAE ............................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................... 3

ARGUMENT ......................................................................................... 5

    I.    Money damages are critical to prevent the procedural gamesmanship that keeps meritorious RLUIPA claims out of court ........................................................................... 5

        A.    Prison officials frequently moot incarcerated religious minorities' claims for injunctive relief by transferring claimants. ................................................. 7

        B.    Prison officials can cease challenged practices at the eleventh hour to prevent unfavorable rulings. ..... 11

    II.    RLUIPA authorizes suits for money damages against municipalities and municipal officials. ................................. 14

        A.    The Spending Clause clear-statement rule does not apply here because municipalities do not share the States' co-sovereign status. ......................... 16

        B.    *Haight*'s logic does not extend to non-sovereign municipalities. ............................................................. 18

        C.    Because the clear-statement rule does not apply, *Tanzin*'s ordinary meaning analysis should govern. ....................................................................... 20

    III.    Claims for money damages under RLUIPA will not overburden municipal governments. ................................... 22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

4934-4378-4502v.1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ajaj v. United States,*
No. 15–cv–00992-RBJ-KLM, 2016 WL 6212518 (D. Colo.
Oct. 25, 2016), *rev'd, Ajaj v. Fed. Bureau of Prisons*, 25
F.4th 805 (10th Cir. 2022) ................................................................ 13

*Ali v. Adamson,*
__ F.4th __, No. 24-1540, 2025 WL 941291 (6th Cir. Mar.
28, 2025) ................................................................ 16, 19, 21

*Arrington-Bey v. City of Bedford Heights,*
858 F.3d 988 (6th Cir. 2017) ................................................................ 24

*Banks v. Dougherty,*
No. 07-cv-5654, 2010 U.S. Dist. LEXIS 17443 (N.D. Ill.
Feb. 26, 2010) ................................................................ 8, 9

*Barnett v. Short,*
129 F.4th 534 (8th Cir. 2025) ................................................................ 5

*Carey v. Piphus,*
435 U.S. 247 (1978) ................................................................ 6

*Centro Familiar Cristiano Buenas Nuevas v. City of Yuma,*
651 F.3d 1163 (9th Cir. 2011) ................................................................ 14

*Church of Our Lord & Savior Jesus Christ v. City of Markham,*
913 F.3d 670 (7th Cir. 2019) ................................................................ 15

*Colvin v. Carruso,*
605 F.3d 282 (6th Cir. 2010) ................................................................ 9

*Elrod v. Burns,*
427 U.S. 347 (1976) ................................................................ 6

iii

*FBI v. Fikre*,
    601 U.S. 234 (2024)................................................................ 12

*Figel v. Overton*,
    No. 2:03-CV-216, 2006 WL 625862 (W.D. Mich. Mar. 9,
    2006)...................................................................................... 13

*Guzzi v. Thompson*,
    No. 07-1538, 2008 WL 2059321 (1st Cir. May 14, 2008) ................. 12

*Haight v. Thompson*,
    763 F.3d 554 (6th Cir. 2014)................................................ 16, 17, 18

*Henderson v. Ayers*,
    No. CV 06-4348-VBF(RC), 2008 U.S. Dist. LEXIS 108034
    (C.D. Cal. Mar. 14, 2008) .................................................... 10

*Holt v. Hobbs*,
    574 U.S. 352 (2015)............................................................ 4

*Islamic Ctr. of Miss., Inc. v. City of Starkville*,
    840 F.2d 293 (5th Cir. 1988) ............................................... 6

*Koger v. Bryan*,
    523 F.3d 789 (7th Cir. 2008)................................................ 16

*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*,
    510 F.3d 253 (3d Cir. 2007) ................................................ 15

*Marais v. Chase Home Fin. LLC*,
    736 F.3d 711 (6th Cir. 2013)................................................ 3

*Montanye v. Haymes*,
    427 U.S. 236 (1976)............................................................ 7

*Moussazadeh v. Tex. Dep't of Crim. Just.*,
    No. G-07-574, 2009 WL 819497 (S.D. Tex, Mar. 26, 2009) ........... 9, 10

*Mullenix v. Luna*,
    577 U.S. 7 (2015)................................................................ 23

iv

*N. Ins. Co. of N.Y. v. Chatham Cnty.*,
   547 U.S. 189 (2006) ............................................................ 17

*Napier v. Laurel Cnty.*,
   636 F.3d 218 (6th Cir. 2011) .......................................... 24

*Nelson v. Miller*,
   570 F.3d 868 (7th Cir. 2009) .......................................... 13

*Opulent Life Church v. City of Holly Springs*,
   697 F.3d 279 (5th Cir. 2012) .......................................... 14

*Owens v. Schuette*,
   No. 2:24-cv-10787, 2024 WL 4469086 (E.D. Mich. Oct. 10,
   2024) ................................................................ 18, 20, 21

*Pennhurst State Sch. & Hosp. v. Halderman*,
   451 U.S. 1 (1981) ............................................................ 17

*Porter v. Nussle*,
   534 U.S. 516 (2002) ........................................................ 24

*Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*,
   368 F. App'x 370 (4th Cir. 2010) ................................... 15

*Roman Cath. Diocese v. Cuomo*,
   592 U.S. 14 (2020) ............................................................ 6

*Simmons v. Herrera*,
   No. 09-0318 JSW, 2010 WL 1233815 (N.D. Cal. Mar. 26,
   2010) ................................................................................ 10

*Smith v. Allen*,
   502 F.3d 1255 (11th Cir. 2007) ..................................... 24

*Sossamon v. Texas*,
   563 U.S. 277 (2011) .................................................. 11, 16

*Stewart v. City of Euclid*,
   970 F.3d 667 (6th Cir. 2020) .......................................... 23

*Tandon v. Newsom,*
593 U.S. 61 (2021) ................................................................5

*Tanzin v. Tanvir,*
592 U.S. 43 (2020) .............................................. 5, 15, 16, 20

*Tipton v. Lumpkin,*
No. SA-21-CV-00060, 2023 WL 1434265 (W.D. Tex. Feb.
1, 2023) .................................................................................13

*Tree of Life Christian Schs. v. City of Upper Arlington,*
905 F.3d 357 (6th Cir. 2018) ..............................................21

*Tyson v. Giusto,*
No. 06-1415-KI, 2010 U.S. Dist. LEXIS 56526 (D. Or.
June 4, 2010) ........................................................................10

*Uzuegbunam v. Preczewski,*
592 U.S. 279 (2021) ..............................................................6

*Williams v. Taylor,*
No. 1:22-cv-769, 2025 WL 410095 (S.D. Ohio Feb. 6, 2025) ..............25

## Statutes

28 U.S.C. § 1915(b)(1) ...............................................................25

28 U.S.C. § 1915(g) .....................................................................25

28 U.S.C. § 1915A(b)(1)–(2) .......................................................25

42 U.S.C. § 1997e .......................................................................26

42 U.S.C. § 2000bb-1(c) ........................................................15, 21

42 U.S.C. § 2000cc-2(a) ...................................... 3, 14, 15, 21

42 U.S.C. § 2000cc(a)(2)(A) ......................................................17

4934-4378-4502v.1

**Other Authorities**

Danielle Kaeble, *Time Served in State Prison, 2018*, DOJ, Bureau of Just. Stat. (March 2021), https://bjs.ojp.gov/document/tssp18.pdf ................................................. 8

H.R. Rep. No. 106-219 (1999) .................................................................. 16

Joseph Davis & Nicholas Reaves, *The Point Isn't Moot: How Lower Courts have Blessed Government Abuse of the Voluntary-Cessation Doctrine*, 129 Yale L.J. Forum 325 (2019) .......................................................................................................... 7

Muslim Advocates, *Fulfilling the Promise of Free Exercise for All: Muslim Prisoner Accommodation in State Prisons*, Free Exercise Report (2019), https://perma.cc/QKV4-UBW4 ................................................................................................ 2

*Joint Statement of Senator Hatch and Senator Kennedy on the Religious Land Use and Institutionalized Persons Act of 2000*, 146 Cong. Rec. 16698 (2000) .................................... 3

4934-4378-4502v.1

## INTEREST OF AMICUS CURIAE[1]

The Muslim Public Affairs Council (MPAC) is a nonprofit organization that represents the interests of Muslim Americans. For more than thirty-five years, MPAC has worked to increase public understanding of Islam and to improve policies affecting Muslim Americans through engagement with government, media, and communities across the country. MPAC believes that our nation is enriched by the vital contributions of Muslim Americans, and that Muslims are an important part of American pluralism.

MPAC regularly files amicus curiae briefs in cases that raise issues of concern for Muslim Americans. This includes cases involving the free exercise of religion by incarcerated persons. Muslim Americans are disproportionately represented in the prison population, so MPAC has a

---

[1] No counsel for any party authored this brief, in whole or part. No person or entity other than amicus contributed monetarily to its preparation or submission. This brief was prepared in part by a clinic operated by Yale Law School but does not purport to represent the school's institutional views, if any.

4934-4378-4502v.1

particular interest in ensuring that the free exercise rights of incarcerated Muslims are protected.[2]

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) is especially important to Muslim Americans because nearly every aspect of religious practice in prison requires governmental approval or accommodation. RLUIPA protects sincerely held religious beliefs and practices that are sometimes disrespected or misunderstood in prisons. RLUIPA is critical to preserving our nation's guarantee of religious free exercise. These protections would in many cases be hollowed out if money damages were categorically not available against prison officials who interfere with inmates' free exercise rights.

---

[2] In a survey of thirty-four states, Muslims comprised approximately one percent of the United States population, and approximately nine percent of the prison population. Muslim Advocates, *Fulfilling the Promise of Free Exercise for All: Muslim Prisoner Accommodation in State Prisons* 15, Free Exercise Report (2019), https://perma.cc/QKV4-UBW4.

2

## INTRODUCTION AND SUMMARY OF ARGUMENT

Congress passed RLUIPA to ensure that every prisoner, whatever his religion, could freely practice his faith. No longer would he depend on "the mercy of those running the institution" for his free exercise rights; after RLUIPA, those freedoms would be guaranteed. *Joint Statement of Senator Hatch and Senator Kennedy on the Religious Land Use and Institutionalized Persons Act of 2000*, 146 Cong. Rec. 16698, 16699 (2000). For Muslim Americans and members of other minority religions, RLUIPA has proved especially critical. Prison officials—sometimes motivated by "bigotry" and other times due to "ignorance" of uncommon religious practices—more often burden unfamiliar or disfavored religious practices. *Id.* RLUIPA provides prisoners with a means to vindicate their free exercise rights and correct such abuses.

In crafting RLUIPA, Congress devoted special care to appropriate its remedial provisions, and devised a private right of action to "obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). This expansive remedial provision must be "construed broadly to effectuate its purposes." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013). As the Supreme Court has explained, this provision was intended

to provide "expansive protection for religious liberty." *Holt v. Hobbs*, 574 U.S. 352, 358 (2015).

Despite this, the court below read money damages out of RLUIPA's promise of providing "appropriate relief," a ruling that would—if adopted as the law of this Circuit—neuter the statute.  If only injunctive relief were available, prison officials could moot meritorious free exercise claims by transferring inmates, offering one-off accommodations while maintaining unconstitutional policies, or abandoning the challenged practice only after years of litigation.  And inmates with only short sentences or just a few months remaining will have effectively no relief available under RLUIPA, since the likelihood of obtaining relief before they are released is slim.

The traditional exceptions to mootness aren't sufficient to prevent these attempts to manipulate federal court jurisdiction. If religious-minority inmates cannot seek damages, their free exercise rights are again put "at the mercy of those running the institution." Recent cases reveal that these dynamics harm religious minorities in particular.  And as the Eighth Circuit recognized earlier this year, the possibility of procedural gamesmanship by prison officials makes money damages an

"even more 'appropriate'" form of relief for religious inmates. *Barnett v. Short*, 129 F.4th 534, 540 (8th Cir. 2025).

In *Tanzin* v. *Tanvir*, the Supreme Court interpreted "appropriate relief" in RLUIPA's sister statute, the Religious Freedom Restoration Act (RFRA), to authorize suits for money damages against the federal government. 592 U.S. 43, 52 (2020). There is no reason to interpret "appropriate relief" any differently here. Although sovereign immunity may preclude damages claims against certain state actors, municipalities have no analogous claim to sovereign immunity. Nor will damages claims overwhelm municipalities, as qualified immunity already limits damages to only the most egregious violations, and the Prison Litigation Reform Act further restricts prisoner litigation to help ensure that only meritorious claims proceed. Unfounded fears do not justify departing from the ordinary meaning of "appropriate relief" in this case.

## ARGUMENT

## I. Money damages are critical to prevent the procedural gamesmanship that keeps meritorious RLUIPA claims out of court.

The Supreme Court has acknowledged that individuals are "irreparably harmed by the loss of free exercise rights 'for even minimal periods of time.'" *Tandon v. Newsom*, 593 U.S. 61, 64 (2021) (per curiam);

*see also, e.g.*, *Roman Cath. Diocese v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.). But procedural manipulation by prison officials has left Owens, and similarly situated inmates, without recourse even in the face of serious constitutional violations. Injunctive relief cannot remedy the past harms that Owens has suffered—monetary damages are the only effective remedy. *See generally Carey v. Piphus,* 435 U.S. 247, 254 (1978) (damages "compensate persons for injuries that are caused by the deprivation of constitutional rights"); *Uzuegbunam v. Preczewski,* 592 U.S. 279, 283 (2021) (holding that "an award of nominal damages by itself can redress a past injury" when a request for injunctive relief from a completed constitutional violation was moot).

There is no dispute that Owens suffered a religious injury. Although Ramadan had ended, Owens' claim would ordinarily have fallen into the "capable of repetition yet evading review" exception to mootness, since Ramadan occurs every 355 days. *See* Opening Br. p. 8. But because he has been transferred to a different facility, Owens could not avail himself of that exception, since he was no longer in the custody of the officials who interfered with his ability to observe "the holiest

4934-4378-4502v.1

month of the year in the Muslim calendar." *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 840 F.2d 293, 296 (5th Cir. 1988); *see* Opening Br. p. 11, 24, 46. If money damages are categorically precluded by RLUIPA, prison officials like Defendants here will have unchecked discretion to moot meritorious claims simply by transferring an inmate.

## A. Prison officials frequently moot incarcerated religious minorities' claims for injunctive relief by transferring claimants.

Owens's case is not an anomaly. Prison officials across the country have strategically mooted inmates' claims by transferring inmates to other facilities, rendering claims for injunctive relief non-justiciable. *See* Joseph Davis & Nicholas Reaves, *The Point* Isn't *Moot: How Lower Courts have Blessed Government Abuse of the Voluntary-Cessation Doctrine*, 129 Yale L.J. Forum 325, 329–31 (2019) (collecting cases). Even if the transfer is not strategic, the freedom and frequency of prison transfers has the effect of frustrating meritorious cases and thus perpetuating constitutional violations. *See generally Montanye v. Haymes,* 427 U.S. 236, 243 (1976) (explaining that adult inmates are committed to the custody of a jurisdiction, not sentenced to a particular institution). And because most inmates in the United States, particularly in state prisons,

serve relatively short sentences,[3] RLUIPA claims for these inmates will almost always become moot before a federal court can rule.

Therefore, the availability of a remedy for an inmate, or a lack thereof, could be conditioned on a happenstance transfer to a different facility or how much time is left on the inmate's sentence. And courts have held that transferred inmates typically fall outside the "capable of repetition yet evading review" exception, because courts frequently consider inmates' claims as facility-specific (absent allegations of a system-wide policy). As a result, religious minorities lose out on legal protection, and courts never have the opportunity to address important free exercise violations.

Many examples illustrate this pattern. In *Banks v. Dougherty*, for example, Muslim patients in a mental health facility brought a RLUIPA claim after the facility failed to provide them Ramadan-compliant meals. No. 07-cv-5654, 2010 U.S. Dist. LEXIS 17443, at *16–19 (N.D. Ill. Feb. 26, 2010). One patient lost thirty pounds in three weeks because of the

---

[3] According to one recent estimate, the median time served in state prison is 1.3 years. *See* Danielle Kaeble, *Time Served in State Prison, 2018*, DOJ, Bureau of Just. Stat. 1 (March 2021), https://bjs.ojp.gov/document/tssp18.pdf.

4934-4378-4502v.1

facility's failure to provide a religious accommodation. Yet the plaintiffs' claims were never redressed: One was transferred to a different facility, and the other was released, making both claims for injunctive relief moot. Indeed, for the patient that remained in the system, the court dismissed the possibility that he would "at some point in the future, be subject to the same alleged deprivations" as "only speculation" because he had been transferred. *Id.* Thus, this plaintiff never received assurance that he would be provided appropriate meals during Ramadan the following year or a remedy for the harms he already suffered.

This practice affects other minority religions, too. In *Colvin v. Caruso*, a Jewish inmate brought a RLUIPA claim after prison officials in the Michigan Department of Corrections denied him kosher meals for sixteen days. 605 F.3d 282, 287–89 (6th Cir. 2010). But when he was transferred to a different facility, the court dismissed his claim for injunctive relief as moot; in the Court's view, his claims were "directed specifically at [the original facility's] policies and procedures." *Id.* Because money damages were unavailable, the inmate had no recourse. Or consider *Moussazadeh v. Texas Department of Criminal Justice*, 2009 WL 819497, at *9 (S.D. Tex. Mar. 26, 2009). There, the inmate sued a

9

Texas prison that had refused to provide him with kosher meals. Before discovery, Texas transferred him to a different facility, mooting his claim. Texas did not change its policy to guarantee kosher meals to Jewish inmates, so the threat to the inmate's religious freedom remained. But if the incarcerated individual hoped to vindicate his rights, he would have had to start from square one. He would need to challenge practices in the new prison and hope to not to be transferred in the middle of litigation again. *Id.*[4]

Transferring inmates to moot claims is a frequent practice by prison officials that subverts RLUIPA's intended protections for religious exercise.

---

[4] *See also*, *e.g.*, *Tyson v. Giusto*, No. 06-1415-KI, 2010 U.S. Dist. LEXIS 56526 (D. Or. June 4, 2010) (dismissing a Muslim inmate's RLUIPA claim as moot because he had been transferred during litigation); *Henderson v. Ayers*, No. CV 06-4348-VBF(RC), 2008 U.S. Dist. LEXIS 108034 (C.D. Cal. Mar. 14, 2008) (dismissing a Muslim inmate's RLUIPA claim for injunctive relief because he was transferred to a different facility after surviving a motion to dismiss); *Simmons v. Herrera*, No. 09-0318 JSW, 2010 WL 1233815, at *3 (N.D. Cal., Mar. 26, 2010) (finding that a Native American prisoner's suit for injunctive relief against prison officials who denied him access to religious services while services for other religions were allowed was moot because the inmate had been transferred).

4934-4378-4502v.1

**B.    Prison officials can cease challenged practices at the eleventh hour to prevent unfavorable rulings.**

Transfers are not the only way prison officials can moot RLUIPA claims; prison officials can also strategically concede the case or provide a one-off accommodation to make the most meritorious prisoner claims go away without creating bad precedent or being forced to change their policies. Even when prisoners' meritorious claims survive the motion to dismiss phase without becoming moot by transfer, the government is afforded an "assumption of good faith" that typically overcomes the voluntary cessation exception to mootness. *See, e.g.*, *Sossamon v. Texas*, 563 U.S. 277, 305 n.6 (2011) (Sotomayor, J., dissenting) ("'[A]bsent evidence that the voluntary cessation [wa]s a sham,' the court held that the 'good faith nature' of Texas' change in policy rendered moot petitioner's claim for injunctive relief."). In other words, the ordinary mootness standard—requiring Defendants to prove there is no reasonable expectation the conduct will recur—is inverted in this

context: Many courts place the burden on *prisoners* to show that the offending conduct *will* recur—an incredibly high bar.[5]

One example is *Guzzi v. Thompson*, where state prison officials initially denied an inmate kosher food and provided proper accommodations only after the inmate appealed to the First Circuit. No. 07-1537, 2008 WL 2059321, at *1 (1st Cir. May 14, 2008) (per curiam). The First Circuit dismissed the appeal as moot on the basis of a last-minute, one-off exception even though the prison's policy had not changed to accommodate kosher inmates more broadly. *Id.* Had the prison instead faced the threat of monetary damages, it might have chosen to end its unconstitutional policy rather than simply wait to see if other inmates would sue. *Nelson v. Miller* also illustrates this procedural gamesmanship. There, the Seventh Circuit dismissed an inmate's RLUIPA claim as moot after the government's eleventh-hour policy

---

[5] Last term in *Federal Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024), the Supreme Court clarified that the government generally is *not* entitled to a lighter burden than private parties when attempting to prove voluntary cessation. Courts have yet to determine whether this change in the law will affect the burden in prisoner litigation. Regardless, courts are likely to still hold that mid-litigation changes in prison policy and non-sham inmate transfers are sufficient to moot pending claims for injunctive relief.

4934-4378-4502v.1

change. *Nelson v. Miller*, 570 F.3d 868, 882–83 (7th Cir. 2009). The Seventh Circuit asked the prisoner to prove that the government's policy change would not last, rather than asking the government to prove that it would. Because the plaintiff had not mustered explicit evidence that the prison intended to revoke his religiously accommodated diet again, the court dismissed his claim. *Id.*

These are not isolated incidents. State and federal prison officials frequently change challenged policies only *after* prisoners bring plainly meritorious claims, shielding their actions with an unearned assumption of good faith and circumventing the voluntary cessation doctrine. *See, e.g.*, *Ajaj v. United States*, No. 15-cv-00992-RBJ-KLM, 2016 WL 6212518, at *1 (D. Colo. Oct. 25, 2016) (holding that a prisoner's claim—that officials failed to provide him his medication at Ramadan-compliant times—was moot because the government ceased the challenged conduct during litigation), *rev'd*, *Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805 (10th Cir. 2022); *Figel v. Overton*, No. 2:03-CV-216, 2006 WL 625862 (W.D. Mich. Mar. 9, 2006) (holding that a late-in-the-day policy change rendered an inmate's RLUIPA claims moot, even though his religious texts had already been confiscated on five separate occasions); *Tipton v.*

*Lumpkin*, No. SA-21-CV-00060, 2023 WL 1434265, at *5 (W.D. Tex. Feb. 1, 2023), *report and recommendation adopted*, 2023 WL 4666638 (W.D. Tex. July 20, 2023) (dismissing as moot challenge to grooming policy as moot in light of mid-litigation policy change).

Putting any potential animus aside, individuals belonging to minority faiths face an uphill battle because prison officials have several avenues to moot prisoner claims. Routine transfers and apathy toward the needs of religious minorities can further exacerbate the challenges that religious minorities face while incarcerated.

## II. RLUIPA authorizes suits for money damages against municipalities and municipal officials.

RLUIPA authorizes inmates to "obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). The critical question here is whether "appropriate relief" authorizes money damages against municipalities, who are not shielded by sovereign immunity. Other circuit courts have addressed this issue and have found that RLUIPA does authorize such a claim. *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1169 (9th Cir. 2011) (holding that money damages available under RLUIPA against municipalities); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 289–90 (5th Cir. 2012)

14

(holding that "money damages are available under RLUIPA against political subdivisions of states, such as municipalities").[6]

However, the Sixth Circuit and the Supreme Court have not directly addressed this question of first impression, but the Court need not look far for guidance on this question of first impression. In *Tanzin*, the Supreme Court recognized that the ordinary legal meaning of the term "appropriate relief" in RFRA included monetary damages. *Tanzin*, 592 U.S. at 45. There is no reason to think that this term would have a different meaning in RFRA's "related statute," RLUIPA. *Id.* at 51–52.[7]

---

[6] Other circuits have assumed, without explicitly deciding, that damages are available against municipalities in RLUIPA actions. *Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 680 (7th Cir. 2019) (reversing district court dismissal of damages claim because the Church's alleged injuries were "within the ambit of compensatory damages"); *Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 368 F. App'x 370, 373 (4th Cir. 2010) (per curiam) (affirming district court's judgment entering jury's compensatory damages award for the County's RLUIPA violation); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 273 (3d Cir. 2007) (remanding RLUIPA equal terms claim for district court to enter summary judgment and determine compensatory damages for church).

[7] RFRA and RLUIPA are companion statutes, both of which allow plaintiffs who bring successful claims to "obtain appropriate relief." 42 U.S.C. § 2000bb-1(c) (RFRA); 42 U.S.C. § 2000cc-2(a) (RLUIPA). The Congressional Record notes that Section 4(a) of RLUIPA "track[s] RFRA, creating a private cause of action for *damages*, injunction, and declaratory judgment...." H.R. Rep. No. 106-219, at 29 (1999) (emphasis

(*continued on next page*)

4934-4378-4502v.1

The Supreme Court and this Court have held that sovereign immunity bars RLUIPA money-damages claims against States, *Sossamon*, 563 U.S. at 285–86, and state officials, *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014).[8] However, this case involves municipal officials, "who do not enjoy sovereign immunity." *Tanzin*, 592 U.S. at 52. Thus, neither *Sossamon* and *Haight* nor their progeny address whether RLUIPA's authorization of "appropriate relief" authorizes money damages in cases, like this, sovereign immunity is not available. Just as *Tanzin* distinguished *Sossamon* on the "obvious difference" that the defendants in *Tanzin* did not enjoy sovereign immunity, the defendants here likewise are not entitled to sovereign immunity.

### A. The Spending Clause clear-statement rule does not apply here because municipalities do not share the States' co-sovereign status.

Congress exercised its Spending Clause power in enacting RLUIPA's prisoner provision. 42 U.S.C. § 2000cc(a)(2)(A) (applying the

---

added); *see also, e.g.*, *Koger v. Bryan*, 523 F.3d 789, 802 (7th Cir. 2008) ("RLUIPA did not announce a new standard, but shored up protections Congress had been attempting to provide since 1993 by means of the RFRA ….").

[8] The Sixth Circuit recently reaffirmed the holding in *Haight* in *Ali v. Adamson*, __ F.4th __, No. 24-1540, 2025 WL 941291 (6th Cir. Mar. 28, 2025). Like *Haight*, *Ali* involved state officials, not municipal employees.

4934-4378-4502v.1

prisoner provision to all who "receive[] Federal financial assistance"). The Spending Clause authorizes federal legislation to include conditions on state appropriations that Congress could not directly require. *Haight*, 763 F.3d at 570. To safeguard core sovereign interests, such conditions must be clearly stated. *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981).

This clear-statement rule, however, is triggered only by statutes that might otherwise infringe state sovereignty. *See N. Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006). In other words, where federalism concerns are not implicated, the clear-statement rule is inapposite. The Court has consistently practiced judicial restraint, applying the clear statement rule only to cases where the legitimacy of Congress' power to legislate was inherently limited by the Eleventh Amendment.

In particular, the clear-statement rule plays no role in cases, like this one, where the defendants are all municipal employees. The Supreme Court "has 'consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities." *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*,

440 U.S. 391, 401 (1979); *see id.* at 401 (collecting cases). Because Jackson County Jail is a municipality not covered by the constitutional cloak of the Eleventh Amendment, the clear statement rule does not apply. Therefore, the only question presented here—one not resolved by *Sossamon* or *Haight*—is whether the plain and ordinary meaning of "appropriate relief" includes monetary damages.

### B. *Haight*'s logic does not extend to non-sovereign municipalities.

The district court relied heavily on *Haight*. *See, e.g.*, *Owens v. Schuette*, No. 2:24-cv-10787, 2024 WL 4469086, at *7 (E.D. Mich. Oct. 10, 2024) ("[T]he Sixth Circuit's holding in Haight is applicable here."). This was in error. The ruling in *Haight* applies in actions seeking "money damages against state prison officials" because in that context, Congress used its spending power "to exceed its otherwise limited and enumerated powers." *Haight*, 763 F.3d at 568, 570. "RLUIPA extends to state officials due only to Congress's spending power to 'implement federal policy it could not impose directly under its enumerated powers" by offering states the money to comply with this extra-constitutional regulation." *Ali*, 2025 WL 941291, at *4 (quoting *NFIB v. Sebelius*, 567 U.S. 519, 578 (2012)). But no exchange is necessary as applied to municipalities. Further

18

guidance is needed to evaluate how *Haight* and *Tanzin* would be applied to municipalities.

State liability, of course, is a world apart from municipal liability. Municipalities cannot waive something they never possessed. Sweeping them into *Haight*'s analysis would ignore the Supreme Court's repeated clarifications that the clear statement rule applies *only* when RLUIPA is used to exceed Congress's enumerated powers to intrude on state immunity. This Court should not extend *Haight* to entities outside the protective sphere of sovereign immunity. While the Court recognized the need for clarity in spending power legislation generally, its language should not be taken to expand the need for clarity to situations where sovereign immunity is not implicated.

*Ruplinger v. Louisville/Jefferson County Metro Government* correctly interpreted this issue. There, the plaintiff was booked into a municipal jail. During the booking process, municipal officials required her to violate her sincerely held religious beliefs by removing her hijab to "get proper head dimensions." 2021 WL 682075, at *4 (W.D. Ky. Feb 22, 2021). The municipal jail then published photographs of Ruplinger online. In deciding the issue of the availability of monetary damages

19

under RLUIPA, the court held that "[s]ince the Louisville Metro Government [(a municipality)] is not protected by Eleventh Amendment immunity, the *Sossamon* decision does not bar Ruplinger's money-damages claim, or punitive damages claim under RLUIPA." *Id.* Thus, when sovereign immunity is not at stake, the ordinary legal meaning of "appropriate relief" allows for monetary damages under RLUIPA, faithful to the *Tanzin* analysis.

### C. Without the clear-statement rule in play, *Tanzin*'s ordinary meaning analysis should govern.

In *Tanzin*, the Supreme Court held that the ordinary meaning of "appropriate relief" naturally includes money damages. 592 U.S. at 45.[9] Both RFRA and RLUIPA employ the same phrase: "obtain appropriate relief." 42 U.S.C. § 2000bb-1(c); 42 U.S.C. § 2000cc-2(a). Some argue that because RLUIPA rests on the Spending Clause, *Tanzin*, rooted in Section 5 of the Fourteenth Amendment, should not apply. The Sixth Circuit noted that "casually grafting *Tanzin's* RFRA holding as to federal

---

[9] The district court incorrectly construed the question as whether *Tanzin* "abrogate[d] *Haight*." *Owens*, 2024 WL 4469086, at *7. That is a different question subjected to a heightened standard. *Haight* never applied to municipal-employee defendants, and the Court can reinstate Owens's claims here without calling into question *Haight*'s ruling as to state-employee defendants.

4934-4378-4502v.1

officials onto RLUIPA and its application to state officials would violate, not vindicate, the 'inherently context dependent' nature of 'appropriate relief.'"[10] However, if context controls the meaning of "appropriate relief," the distinction between state and municipal liability should matter. Indeed, because this case does not concern sovereign immunity, application of the clear statement rule would be inapposite. Both *Tanzin* and the case before the Court address what constitutes "appropriate relief" against non-sovereign entities; there are few, if any, material distinctions between them. The plain meaning of "appropriate relief," which the Court has repeatedly interpreted to include damages, remains consistent. Consequently, *Tanzin's* rationale underscores that monetary awards are viable in RLUIPA suits when no state sovereign immunity is at stake.

In *Tree of Life Christian Schools v. City of Upper Arlington*, the Sixth Circuit acknowledged that the plaintiff's RLUIPA money-damages claim, aimed at a city, was not moot. 905 F.3d 357, 365–66 (6th Cir. 2018). This was no casual aside; it reflected the recognition that monetary damages against a municipal defendant were permitted. In *Haight*, the

---

[10] *Ali*, 2025 WL 941291, at *6 (quoting *Tanzin*, 592 U.S. at 49.).

Sixth Circuit applied a clear statement rule to avoid stepping on a co-sovereign State's toes. But in *Tree of Life*, the defendant was a municipality, which has long been susceptible to damages claims under federal civil rights laws. The *Tree of Life* Court's silence regarding a supposed "*Haight* bar" speaks volumes.

## III. Claims for money damages under RLUIPA will not overburden municipal governments.

Money damages will have an outsized impact on religious minorities' ability to vindicate their rights, but comparatively little impact on municipal treasuries. Existing procedural safeguards severely restrict the availability of damages. These limitations have kept RFRA money-damages cases manageable, and there is no reason to believe that they will not be equally effective in the RLUIPA context. Municipalities will not be overwhelmed by litigation if this Court holds that money damages are available under RLUIPA. However, in the narrow cases where money damages are available, they may be the only thing that ensure a prisoner his right to adjudication of clear violations of constitutional rights.

Well-developed mechanisms control the volume of prisoner suits and sort the wheat from the chaff. Two principal guardrails bar most

prisoners' suits for money damages against municipal officials: qualified immunity and the Prison Litigation Reform Act (PLRA). These safeguards protect municipalities from litigating all but the most extreme RLUIPA violations.

Qualified immunity would quickly defeat many RLUIPA damages claims. It bars suits against "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 3411 (1986)). Qualified immunity applies with equal force against municipal officials. *See Stewart v. City of Euclid*, 970 F.3d 667, 675 (6th Cir. 2020) (holding that a claim against a municipal police officer was barred by qualified immunity). Although municipalities are not directly shielded by qualified immunity, the Sixth Circuit applies the same standard indirectly to most claims against municipalities: Municipalities are only liable for deliberate indifference claims related to their employees' conduct when that conduct violates a clearly established right. *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994–95 (6th Cir. 2017). In other words, if a suit against a municipal official would be barred by qualified immunity, a suit against the municipality for that officer's conduct is often barred

in this Circuit, too. Thus, only knowing or grossly reckless violations on inmates' rights will be eligible for money damages under RLUIPA.

Claims that overcome qualified immunity must still survive the PLRA's procedural strictures. First, the PLRA imposes a "firm exhaustion requirement" on all inmate suits that redirects most prisoners' claims out of court and into administrative proceedings. *Porter v. Nussle*, 534 U.S. 516, 531 (2002); 42 U.S.C. § 1997e; *see, e.g.*, *Napier v. Laurel Cnty.*, 636 F.3d 218, 220 (6th Cir. 2011) (affirming dismissal of prisoner's claim because he had failed to exhaust administrative remedies as required by the PLRA). Second, the PLRA imposes an early screening requirement that nips frivolous claims in the bud, even before defendants file responsive pleadings. District courts must immediately review every prisoner claim and dismiss any that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)–(2). This automatic, expedited review process means that municipalities need not spend any time or money defending against frivolous claims or those which are barred by qualified immunity—courts dismiss them sua sponte. *See, e.g.*, *Williams v. Taylor*,

No. 1:22-cv-769, 2025 WL 410095 at *4 (S.D. Ohio Feb. 6, 2025) (dismissing a prisoner's claims sua sponte after initial screening). Third, the PLRA amended the federal *in forma pauperis* statute to impose heightened barriers to prisoner filings. Unlike for other indigent plaintiffs, filing fees are not waived for prisoners. 28 U.S.C. § 1915(b)(1). And once a prisoner files three claims that are dismissed in the early screening process, he must pay the full filing fee up front for any subsequent claims. 28 U.S.C. § 1915(g). Finally, the PLRA caps awards of attorneys' fees. This limits the fee awards that municipalities would have to pay successful litigants and discourages prisoners from initiating expensive litigation except in response to the most grievous offenses. 42 U.S.C. § 1997e(d). These procedural requirements severely restrict prisoners' abilities to bring RLUIPA claims and ensure that municipalities only face meritorious claims.

Taken together, qualified immunity and the PLRA cabin money damages under RLUIPA. Only claims that meet the PLRA's onerous procedural requirements and allege egregious violations of religious liberties that overcome qualified immunity will survive. RLUIPA's

4934-4378-4502v.1

authorization of money damages will not lead to an unmanageable influx of litigation.

## CONCLUSION

For the foregoing reasons, and those stated by Appellant, this Court should grant *en banc* review, reverse the judgment of the District Court, and remand the case for further proceedings.


Dated:  April 18, 2025                    Respectfully submitted,

                                          /s/ *Daniel Hay*
Nicholas Reaves                           Daniel Hay
Yale Law School                           Lillian Holmes
Free Exercise Clinic                      John Lee
1919 Pennsylvania Ave. N.W.               Sidley Austin LLP
Suite 400                                 1501 K Street, N.W.
Washington, D.C. 20006                    Washington, D.C. 20005
                                          Telephone: (202) 736-8000

                                          Phillip Shaverdian
                                          Sidley Austin LLP
                                          350 South Grand Avenue
                                          Los Angeles, CA 90071
                                          Telephone: (213) 896-6000

*Counsel for Amicus Curiae Muslim Public Affairs Counsel*

4934-4378-4502v.1

# CERTIFICATE OF COMPLIANCE

In accordance with Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7), and Sixth Circuit Rule 32, I certify that this brief complies with the applicable type-volume limitations because this brief contains 6,158 words, including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1). It complies with typeface requirements for Federal Rule of Appellate Procedure 32(a)(5) and the Circuit Rules because it has been set in Century Schoolbook font in a size measuring 14 points.

Dated: April 18, 2025

/s/ Daniel Hay
Daniel Hay
Attorney for Amicus Curiae